**MAJOR LEAGUE BASEBALL
PLAYERS ASSOCIATION,
Plaintiff,**

v.

**DAD'S KID CORP., Defendant.**

**No. 92 Civ. 5153 (RO).**

United States District Court,
S.D. New York.

Nov. 12, 1992.

Harold F. McGuire, Jr., Terri E. Simon, McGuire, Kehl & Nealon, New York City, Russell S. Jones, Jr., Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., for plaintiff.

Christine Karol Roberts, Dad's Kid Corp., Costa Mesa, Cal., for defendant.

## OPINION AND ORDER

OWEN, District Judge:

Major League Baseball Players Association ("MLBPA") moves for a preliminary injunction against Dad's Kid Corp. and for partial summary judgment. MLBPA alleges that Dad's Kid has infringed its trademark rights under federal and state trademark law, and has misappropriated publicity rights belonging to major league baseball players, for whom MLBPA is the ex-

clusive licensing agent, by manufacturing and selling "Tri–Cards," a concededly high-quality attractive use of previously purchased authentic baseball cards bought by Dad's Kid for full price from one of plaintiff's licensees. Although not a factor in the outcome, there appears to be little question of Dad's Kid's good-faith belief it does not infringe, for it advertises widely in the trade magazines and did a substantial legal work-up before commencing manufacturing.

■ Turning first to the preliminary injunction motion, on the record before me it appears that Dad's Kid makes each Tri–Card by taking three authentic licensed baseball cards originally made by MLBPA's licensees (*i.e.,* Fleer, Upper Deck, etc.). Leaving one card intact, Dad's Kid cuts the player's total figure with bat, etc. from each of the two remaining cards, and then slightly staggers those images above the player's image on the intact card, giving a 3–D effect. The reverse side of each Tri–Card is simply the reverse side of the original licensed card, bearing the player photograph, player information, and the trademarks and logos of the licensed manufacturer, Major League Baseball and the MLBPA. Each Tri–Card is mounted on a plastic frame and packaged in a container bearing the disclaimer:

> TRI CARDS™ are manufactured by Dad's Kid Corp. utilizing its 3–D laser die-cutting process on cards previously manufactured and sold by various companies including SCORE,[R] UPPER DECK,[R] FLEER,[R] AND DONRUSS.[R] Dad's Kid Corp. disclaims any copyright or trademark rights with respect to the previously manufactured cards used by it to create TRI CARDS.™ Dad's Kid Corp. disclaims any proprietary rights to the name and logo MLB and MAJOR LEAGUE BASEBALL,[R] which are the registered trademarks and/or copyrights of Major League Baseball Players Association and Major League Baseball, respectively.

Recently, Dad's Kid has printed the additional disclaimer on each Tri–Card's plastic frame: "TRI CARDS™ are manufactured by Dad's Kid Corp. of Newport Beach CA. Dad's Kid Corp. and TRI CARDS™, are not affiliated with, endorsed or sponsored by TOPPS[R], DONRUSS[R] (LEAF, INC.), FLEER[R], SCORE[R], UPPER DECK[R], Major League Baseball (MLB) or Major League Baseball Players Association (MLBPA)."

The District Court in *Alexander Binzel Corp. v. Nu–Tecsys,* 785 F.Supp. 719 (N.D.Ill.1992) had before it a similar situation. *Binzel,* a manufacturer of welding guns, charged its competitor with trademark infringement because the competitor's products used, among others, trademarked components purchased from the plaintiff. Other than on the packaging, nowhere on defendants' product was there any mark identifying defendants as the source of the product. Similarly, in our case: (1) Dad's Kid assembled its Tri–Cards using component parts with MLBPA's trademark; (2) defendant's identifying mark can only be found on the packaging of each Tri–Card, not on the product itself; (3) Dad's Kid purchases three officially licensed cards to produce each Tri–Card, thus generating royalty income for MLBPA. Additionally, in this case Dad's Kid prints a disclaimer on the packaging of its product. The defendants in *Binzel* did not. Denying the plaintiff's motion for preliminary injunction, in *Binzel* the court noted at 724:

> This court believes that defendants did all that was required of them to diminish customer confusion by packaging their product with [their] name and logo. It is unsurprising that [plaintiff] cites no authority requiring [defendants] to eradicate [plaintiff's] mark from [plaintiff's] parts or otherwise label the welding guns with [defendant's] name or logo. Although [defendants] procured the components from [plaintiff], [defendants] paid the price [plaintiff] asked and [plaintiff] profited from the sale. [Plaintiff] cannot now be heard to complain that defendants' use of the trademarked parts constitutes infringement.

I further note the trade magazines are replete with advertisements not only of Dad's Kid's product but for the sale and

resale of millions of equally genuine cards, some elegantly and innovatively packaged or inventively arranged and displayed on elaborate wall mountings. Dad's Kid's product on this record appears to be no different than these, though in 3–D with three genuine cards. I see no likelihood that anyone will be confused as to origin by reason of Dad's Kid's treatment of genuine cards.

■ MLBPA also claims that Dad's Kid has misappropriated the publicity rights of major league baseball players. The fact that an enormous secondary market exists for baseball cards and baseball card derivative works leads me to conclude on this record that baseball players have little if any continuing publicity rights with respect to the use and reuse of their pictures on cards by subsequent purchasers and sellers of duly licensed baseball cards following a perfectly proper first sale into commerce for which the players get a royalty.

Accordingly, the requisite showing of likelihood of success on the merits not being made, MLBPA's motion for a preliminary injunction is denied, as is necessarily the motion for partial summary judgment.

So ordered.