**ROLEX WATCH, U.S.A., INC.,
a corporation, Plaintiff–
Appellant,**

v.

**MICHEL CO., a business; Micha
Mottale, an individual,
Defendants–Appellees.**

No. 97–55877.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1998.

Filed June 3, 1999.

David H.T. Kane, Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele, & Richard, New York, New York, for the plaintiff-appellant.

Janice P. Brown, Seltzer, Caplan, Wilkins & McMahon, San Diego, California, for the defendants-appellees.

Before: BOOCHEVER, TASHIMA, and WARDLAW, Circuit Judges.

TASHIMA, Circuit Judge:

Micha Mottale, doing business as Michel Co. ("Mottale"), reconditions used Rolex watches with parts that are not provided or authorized by Rolex Watch, U.S.A., Inc. ("Rolex"), and sells the altered watches, as well as generic replacement parts fitting Rolex watches, to jewelry dealers and selected retail jewelers. In addition, Mottale provides the service of specially reconditioning used Rolex watches. The district court held that Mottale's retention of the original Rolex trademarks on the altered "Rolex" watches that he sells constituted trademark counterfeiting under section 32(1)(a) of the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1114(1)(a), as interpreted by our decision in *Westinghouse Electric Corp. v. General Circuit Breaker & Electric Supply Inc.*, 106 F.3d 894, 899–900 (9th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 155, 139 L.Ed.2d 101 (1997). On that basis, the district court permanently enjoined Mottale from selling such altered watches without (1) adding permanent independent marks on the non-Rolex parts, and (2) including a written disclosure concerning the generic replacement parts on tags, invoices, promotions, and advertising.

Rolex appeals, principally arguing that the relief ordered by the district court is inadequate because the changes that Mottale makes to used Rolex watches are so basic that they result in a different product. We agree, and accordingly direct the district court to enjoin Mottale from retaining Rolex's trademarks on the altered watches he sells. In addition, we reverse the district court's denial of Rolex's re-

quest for its attorney's fees on this claim and remand that request for consideration under section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b). We reject, however, Rolex's contentions that it is entitled an award of damages greater than the district court ordered, and that Mottale's sale of generic replacement parts fitting Rolex watches constitutes contributory trademark infringement.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Rolex is the exclusive distributor of new Rolex watches in the United States. It spends in excess of $15 million a year to advertise and promote Rolex watches. Rolex watches are known by the purchasing public as being of high quality and have a correspondingly high resale value. Rolex watches are sold under numerous of its registered trademarks including, "Rolex," "President," "Crown Device," "Datejust," "Day–Date," "Oyster," "Oyster Perpetual," "GMT–Master," "Cosmograph," and "Submariner," all of which became incontestable as of May 1997, except for Submariner. *See* 15 U.S.C. § 1065 (providing that mark that has been in continuous use for five years subsequent to registration has become incontestable subject to specified conditions). There is no dispute as to the strength of the Rolex name and its Crown Device logo.[1]

Rolex sells new Rolex watches exclusively through official Rolex jewelers. Rolex and official Rolex jewelers service Rolex watches. Rolex watches have a one-year warranty from Rolex; the addition of parts that are not provided or authorized by Rolex voids the watch's warranty. Rolex also will not service watches that have been modified with non-Rolex parts.

Mottale sells jewelry and used luxury watches at wholesale, primarily to jewelry dealers at jewelry trade shows. In addition, Mottale reconditions used luxury

---

1.  The Crown Device logo is a line-design depiction of a crown, made of five prongs with a ball at the top of each, attached to an oval representing the crown base.

watches in response to orders from retail jewelers, typically on behalf of a retail customer. Mottale's gross receipts were over $2.5 million for 1995.

Mottale sells the following products related to Rolex watches: (1) used Rolex watches; (2) used Rolex watches that have been "reconditioned" or "customized" with non-Rolex parts, which we call "altered 'Rolex' watches;" (3) used Rolex watch replacement parts; and (4) generic replacement parts fitting Rolex watches. Mottale customizes used Rolex watches by replacing their bezels (the ring that surrounds the crystal and affixes it to the watch casing), dials, and bracelets, and/or by inserting diamonds into their dials. These replacement parts are not authorized or provided by Rolex. The altered "Rolex" watches retain their original Rolex trademarks on their dials and bracelets, except when Mottale replaces the bracelet. Some examples of the replacement bracelets used by Mottale bear an imitation of the Crown Device logo. The other replacement parts added by Mottale bear no independent mark.

Rolex brought suit against Mottale alleging trademark counterfeiting and infringement under section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a); use of false designations of origin and false description under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under the Federal Trademark Dilution Act, 15 U.S.C. §§ 1125(c) & 1127; trademark dilution under California law, Cal. Bus. & Prof.Code § 14330; and unfair competition under California law, Cal. Bus. & Prof.Code § 17203. After a bench trial, the district court issued a detailed decision and permanent injunction.

The district court held that Mottale's sale of altered "Rolex" watches constituted counterfeit trademark use under section 32(1)(a) as construed in *Westinghouse*, 106 F.3d 894. In *Westinghouse*, we held that retaining the original Westinghouse trade-

marks on used, reconditioned circuit breakers sold by circuit breaker vendors constituted trademark counterfeiting under section 32(1)(a). *See id.* at 899–900. We rejected the vendors' suggestion that duplication of a trademark is necessary for trademark counterfeiting:

[A] copy of a mark is no more likely to confuse the public than is the original; in fact, the public is more likely to be deceived by an original mark because it serves as a perfect imitation. In short, the distinction between using a duplication versus using an original has no relevance to the purposes of trademark law. When an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a "counterfeit" just as it would if an imitation of the mark were attached.

*Id.* at 900.

Here the district court found that retention of the original Rolex marks on altered "Rolex" watches, in the absence of adequate disclosures that the altered watches contain non-Rolex parts, was deceptive and misleading as to the origin of the non-Rolex parts, and likely to cause confusion to subsequent or downstream purchasers, as well as to persons observing the product. Accordingly, under *Westinghouse*, the district court concluded that this confusing use of Rolex's trademarks in connection with the sale of altered "Rolex" watches constituted a counterfeit use of the trademarks.[2]

Based on this finding of liability, the district court issued a permanent injunction. The district court found that the changes Mottale made to the used Rolex watches were not so extensive that Mottale should be completely enjoined from retaining Rolex's trademarks on the used Rolex watches he sells. Rather, the district court required Mottale to place an independent, permanent mark on the non-Rolex replacement parts that he adds to Rolex watches, such as "Michel Co.," and to

2. Mottale did not appeal this ruling.

include a written disclosure in tags, promotions, and advertising of his altered "Rolex" watches.[3] The district court denied Rolex's request for attorneys' fees attributable to the prosecution of this claim, and for treble profits from Mottale's sales of altered "Rolex" watches.[4]

The district court concluded that Mottale's sale of separate individual refinished or customized dials bearing the Rolex trademarks violated section 32 of the Lanham Act, and that Mottale's sale of bracelets with crown designs was likely to be confusing to consumers. It required that when Mottale sells these replacement parts separately from watches, he include disclosures that the parts are not genuine Rolex parts.[5] The district court found that Mottale's sale of other replacement parts not bearing Rolex trademarks was permissible and that none of Mottale's sales of replacement parts constituted contributory infringement. The district court also found no liability under section 43(a) of the Lanham Act and federal and state anti-dilution statutes for any of Mottale's products.[6] We have jurisdiction under 28 U.S.C. § 1291 and 15 U.S.C. § 1121(a). We affirm in part, and reverse and remand in part.

## II.  DISCUSSION

### A.  Adequacy of Injunctive Relief

Rolex contends that the changes that Mottale makes to the used Rolex watches are so basic that the district court erred in failing to enjoin him from retaining Rolex's trademarks on the altered "Rolex" watches that he sells. We review this challenge to the scope of injunctive relief granted by the district court for an abuse of discretion. See Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). In granting a permanent injunction, "[t]he district court abuses its discretion if its conclusion is based on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." Multnomah Legal Servs. Workers

---

3.  The district court required the following disclosure:

> This watch contains non-Rolex parts which are not supplied by an official Rolex jeweler. The addition of non-Rolex parts voids the Rolex warranty. Rolex Watch, U.S.A., Inc. may no longer service a watch containing non-Rolex parts.

4.  The district court also found that Mottale sold two watches bearing Rolex trademarks that have no official Rolex parts, and one watch band bearing Rolex trademarks that is not a Rolex band at trade shows. It concluded that Mottale's sale of these completely counterfeit watches and bracelet violated section 32(1)(a) of the Lanham Act, and issued a permanent injunction, granted Rolex treble profits from these watches, and its attorneys' fees under 15 U.S.C. § 1117(b). Mottale did not appeal this ruling.

5.  The district court required the following disclosure on tags, and a similar disclosure on invoices and in advertising and promotions:

> This is not an original Rolex part. It is not supplied by an official Rolex jeweler. The addition of non-Rolex parts voids the Rolex warranty. Rolex Watch, U.S.A., Inc. may no longer service a watch containing non-Rolex parts. Do Not Remove this Tag Prior to Sale to Consumer.

6.  Rolex also argues that the district court erred in not finding Mottale liable under section 43(a) as well as under federal and state anti-dilution laws. See 15 U.S.C. § 1125(c); Cal. Bus. & Prof.Code § 14330. A finding of liability under these laws, however, would provide Rolex no greater remedies than those available under the district court's unchallenged determination of liability under section 32(1)(a) of the Lanham Act. See 15 U.S.C. § 1117 (providing remedies for violations rights of trademark registrants and violations of § 1125(a)); U–Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1041–42 (9th Cir.1986) (holding that remedies of section 35, 15 U.S.C. § 1117, are available for violations of section 43(a), 15 U.S.C. § 1125(a)); Cf. Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 205 n. 8 (5th Cir.1998) (declining to address federal trademark dilution liability where all the remedies sought were available under trademark infringement finding); Cal. Bus. & Prof.Code § 14430 (providing only injunctive relief for trademark dilution). Thus, in light of our disposition of Rolex's claims under section 32(1)(a), we find it unnecessary to reach the alternative bases for liability that Rolex asserts on appeal.

*Union v. Legal Servs. Corp.,* 936 F.2d 1547, 1552 (9th Cir.1991).

Our analysis of Rolex's plea for greater injunctive relief begins with *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947). In *Champion,* the manufacturer of Champion brand spark plugs brought a trademark infringement action against a business that repaired and reconditioned used Champion spark plugs and resold them. *See id.* at 126, 67 S.Ct. 1136. The reconditioned spark plugs retained their original Champion trademark and were sold in boxes stamped with the word "Champion." *See id.* The Supreme Court upheld an injunction that permitted the business to continue to sell the reconditioned spark plugs bearing their original Champion trademark so long as the words "Used" or "Repaired" were also stamped on the plugs and the cartons included a more complete disclosure that the plugs were used and reconditioned. *See id.* at 127–28, 130, 67 S.Ct. 1136. The Court reasoned that it is permissible for a secondhand dealer to get some advantage from the trademark "so long as the manufacturer is not identified with the inferior qualities of the product resulting from wear and tear or the reconditioning by the dealer." *Id.* at 130, 67 S.Ct. 1136 (citing *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924)). In reaching the conclusion that stamping "Used" or "Repaired" on the plugs gave the manufacturer all the trademark protection to which it was entitled, the Court acknowledged that "[c]ases may be imagined where the reconditioning or repair would be so extensive or so basic that it would be a misnomer to call the article by its original name, even though the words 'used' or 'repaired' were added." *Id.* at 129, 67 S.Ct. 1136. *Champion* did not pose such as case because "[t]he repair or reconditioning of the plugs does not give them a new design," but rather was no more than "a restoration, so far as possible, of their original condition." *Id.*

Rolex argues that this is a case where the alterations Mottale makes to Rolex's products are so basic that it is a misnomer to permit Mottale to retain Rolex's marks on the altered watches he sells. Mottale refurbishes the Rolex dial, sometimes adding diamonds to it, changes the watch bracelet, and/or replaces the Rolex watch bezel. Rolex asserts that the watch bezel as well as the workmanship involved in inserting diamonds into the face of the watch go to the basic performance and durability of the watch: The quality of the bezel and how it is attached affect the water-proofing of the watch; the insertion of diamonds on the face of the watch can affect the functioning of the watch hands. Rolex also contends that the durability of the watch bracelet and clasp affect the usefulness and longevity of the watch.

This is not the first occasion that the courts have been confronted with these types of claims by a watch manufacturer. In *Bulova Watch Co. v. Allerton Co.,* 328 F.2d 20 (7th Cir.1964), the district court had issued an injunction that permitted a jewelry business to retain the name "Bulova" on the dial of watches it created by refitting Bulova movements and dials into non-Bulova diamond-decorated cases, as long as the word "Movement" was added to the dial. *See id.* at 22–23. The Seventh Circuit reversed. It completely enjoined the use of the "Bulova" name on the recased watches:

> [T]he recasing operation here employed results in a "new construction". The case of a wrist watch is a necessary and integral part of the complete product. The substitution of a different crown and case by defendants results in a different product. The watch is no longer a Bulova watch. It is a new and different "watch" albeit one containing a "movement" manufactured by Bulova.

*Id.* at 23. In view of these changes, the Seventh Circuit held the mere addition of the word "Movement" on the dial was not adequate; further, the court reasoned that the exposed area of the dial would not

accommodate an adequate, readable disclosure. *See id.* at 24. The *Bulova* court thus understood the defendant's jewelry business to fit within that class of cases, recognized but not represented in *Champion*, where the original trademarks cannot be retained on the reconditioned product. *See id.* at 23 (discussing *Champion* ).

In *Rolex Watch USA, Inc., v. Meece*, 158 F.3d 816 (5th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1808, 143 L.Ed.2d 1011 (1999) ("*Meece* "), the Fifth Circuit addressed almost identical circumstances to those presented here.[7] Like Mottale, jeweler Meece sold wholesale Rolex watches that had been "enhanced" with non-Rolex parts, such as diamond bezels, bracelets, and diamonds inserted into the original dial. *See id.* at 820. The only apparent difference between this aspect of Meece's and Mottale's businesses is that Meece also sold new Rolex watches that had been altered with non-Rolex parts, as well as similarly altered used Rolex watches.

In *Meece*, the Fifth Circuit had to decide whether the injunction prohibiting Meece from "injecting into commerce a watch bearing a Rolex mark which is reconstructed with generic replacement parts and which simulates a Rolex Submariner or other Rolex watch" prohibited the sales of altered new Rolex watches. *See id.* at 825. The *Meece* court concluded that the injunction encompassed the sale of altered new watches. *See id.* The court relied primarily on two considerations. First, the court concluded that there was the same threat of harm to Rolex from the sale of new Rolex watches enhanced with non-Rolex parts and the sale of used Rolex watches reconstructed with non-Rolex parts. *See id.* Second, the court concluded that this construction of the injunction was supported by case law, specifically *Bulova*,

prohibiting a party from making changes to the integral parts of a product and reselling it under its original trademark without full disclosure. *See id.* The *Meece* court reached conclusions analogous to those in *Bulova:*

> [T]he bezel on a Rolex watch is a necessary and integral part of the watch and serves a water-proofing function. Obviously, bracelets and dials are also necessary, integral parts: a watch cannot be worn without a bracelet; and, the watch cannot serve its purpose of timekeeping without a dial.

*Id.*

We find the reasoning in *Meece* and *Bulova* persuasive, and further conclude that the alterations that Mottale makes to the used Rolex watches he sells, like those made by Meece and the defendant in *Bulova*, result in a new product, although one containing a Rolex movement and casing. In this light, the district court's requirement that Mottale put an independent mark, such as "Michel Co.," on the non-Rolex parts is no more adequate to prevent consumer confusion than the addition of the word "Movement" to the Bulova dials. Neither conveys basic changes that have been made to the watch. Nor would the face of the watch support a more adequate legend. Hence, under *Champion*, the retention of Rolex's trademarks on Mottale's altered watches is a misnomer— and a trademark infringement. We accordingly hold that the district court abused its discretion in not completely enjoining the use of Rolex's trademarks on the altered watches that Mottale sells.[8]

### B. *Attorney's Fees*

▮ Rolex argues that the district court erred in declining to award attor-

---

7. *Meece* was not decided until after the district court's decision in this case.

8. Rolex noted at oral argument that it did not seek, and had not sought in the district court, an injunction preventing individual owners of Rolex watches from altering their watches

with non-Rolex parts. Neither the district court's injunction, nor the injunction we direct it to enter, enjoins Mottale from altering Rolex watches at the specific request of an individual watch owner.

ney's fees for its claim that Mottale's altered "Rolex" watches constituted trademark counterfeiting. We review the district court's denial of attorney's fees under 15 U.S.C. § 1117 for an abuse of discretion. *See Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 825 (9th Cir.1997). In making this assessment, we review de novo the district court's legal analysis and interpretation of the Lanham Act. *See id.*

▮ There are two potential provisions under which the district court could have awarded Rolex attorney's fees for the prosecution of this claim. First, under 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." A trademark infringement is viewed as "exceptional" under § 1117(a) "when the infringement is malicious, fraudulent, deliberate or willful." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir.1993) (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir.1984)). Second, under 15 U.S.C. § 1117(b), in cases in which the violation of section 32(1)(a), 15 U.S.C. § 1114(1)(a), consists of "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark," the court shall grant the prevailing party a reasonable attorney's fee, unless it finds "extenuating circumstances." We have said that "[i]n counterfeiting cases, 'unless the court finds extenuating circumstances,' treble damages and reasonable attorney's fees are available." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 620 (9th Cir.1993) (quoting 15 U.S.C. § 1117(b)). Under both sections 1117(a) and 1117(b), awards are "never automatic and may be limited by equitable considerations." *Intel Corp.*, 6 F.3d at 620 (quoting *Lindy Pen Co.*, 982 F.2d at 1405, 1409).

The district court found that, except for Mottale's sale of three completely counterfeit items, Mottale's trademark violations were not exceptional under section 1117(a). The district court did not, however, make a determination of whether Rolex is entitled

to attorney's fees under section 1117(b) for the prosecution of its claims that Mottale's altered "Rolex" watches violate trademark counterfeiting prohibitions. Where, as here, the district court finds trademark counterfeiting in violation of section 1114(1)(a), the district court must, when requested, address whether the prevailing party is entitled to the remedies provided by section 1117(b) for those violations. *See* 15 U.S.C. § 1117(b) (providing treble profits or damages and a reasonable attorney's fee for certain trademark counterfeit violations of 15 U.S.C. § 1114(1)(a)).

Both parties urge us to resolve whether Rolex is entitled to these fees under section 1117(b) on the current record. We decline to do so.

> When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings:

> "[F]actfinding is the basic responsibility of district courts, rather than appellate courts, and ... the Court of Appeals should not have resolved in the first instance this factual dispute which had not been considered by the district court."

*Pullman–Standard v. Swint*, 456 U.S. 273, 291–92, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (quoting *DeMarco v. United States*, 415 U.S. 449, 450 n. *, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974)). Accordingly, we reverse the district court's denial of Rolex's request for attorney's fees attributable to its claim that Mottale's altered "Rolex" watches involved counterfeit use of Rolex's trademarks and remand for a determination of whether Rolex is entitled to those fees under section 1117(b).

### C. *Damages*

▮ Rolex argues that the district court erred in not awarding it damages based on Mottale's profits from the sale of altered "Rolex" watches under 15 U.S.C.

§ 1117(a), and further in not trebling that amount pursuant to 15 U.S.C. § 1117(b). Under section 1117(a), the monetary remedies available to the prevailing party include an award of the defendant's profits, any damages sustained by the plaintiff, and costs. *See Intel Corp.*, 6 F.3d at 620. We review the district court's award of damages under the Lanham Act for abuse of discretion. *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir.1994) (citing *Intel Corp.*, 6 F.3d at 621).

The district court denied Rolex's request for Mottale's profits because it concluded that Rolex had not adequately demonstrated what portion of Mottale's sales were attributable to altered "Rolex" watches. The district court based this conclusion on Mottale's testimony in which he stated that he did not know whether the invoices offered by Rolex represented his sale of Rolex products or other watch brands and that even with those invoices that mentioned a Rolex product, it was not clear whether the product sold was simply a used Rolex watch or an altered "Rolex" watch. The district court rejected Rolex's suggestion that Mottale's testimony that thirty percent of his business involved reconditioning used Rolex watches was adequate to show Mottale's gross sales attributable to altered "Rolex" watches.

The district court was within its discretion in rejecting Rolex's suggestion. It was Rolex's burden to show with reasonable certainty Mottale's gross sales from counterfeit altered "Rolex" watches. *See Lindy Pen Co.*, 982 F.2d at 1408 (noting that plaintiff bears burden of establishing gross profits from infringing activity with reasonable certainty). Mottale's thirty percent estimate did not isolate those alterations that Mottale makes at the request of a specific customer, through a retail jeweler, from his other general sales. Without distinguishing between those two categories, the thirty percent estimate does not provide a basis for calculating with reasonable certainty Mottale's profits from the sale of altered "Rolex" watches. We therefore conclude that the district court did not abuse its discretion in deciding not to grant Rolex damages on the basis of Mottale's profits from the sale of altered "Rolex" watches.[9]

### D. Contributory Infringement

▮▮▮ Rolex contends that the district court erred in holding that Mottale's sale of generic replacement parts fitting only Rolex watches—specifically, watch bands, bezels, and reconditioned dials—did not constitute · contributory trademark infringement. The district court's holding was based on a factual finding that Rolex had not produced sufficient evidence of Mottale's intent to induce others to infringe. We review Rolex's challenge to the district court's factual finding for clear error, *see Intel Corp.*, 6 F.3d at 617, and we find none.

The Supreme Court addressed the doctrine of contributory infringement in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853–55, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). *Inwood* involved an allegation that a generic drug manufacturer-distributor distributed drugs to pharmacists in such a way that induced the pharmacists to mislabel the generic drugs under a registered trademark. The Court stated:

> [I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaged in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit.

*Id.* at 854, 102 S.Ct. 2182; *see Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264–65 (9th Cir.1996); *Sealy, Inc.*, 743 F.2d at 1381–82.

---

**9.** We, obviously, do not reach the question of whether, if Rolex had proved Mottale's prof-its, it would be entitled to treble those profits under 15 U.S.C. § 1117(b).

The district court expressly noted that it had evaluated the credibility of the witnesses and found that there was insufficient evidence that Mottale had either intended to induce infringement by others, or had knowledge of others' infringing use of the replacement parts that he distributes. Rolex argues that this finding is clearly erroneous because: (1) Mottale found it difficult to distinguish between genuine Rolex parts and those he distributed; (2) he did not provide any written disclosure on any of the replacement parts, invoices, or other documentation that the parts were non-Rolex; and (3) he knew that the parts would eventually end up incorporated into Rolex watches.

There is evidence, however, that provides support for the district court's finding. Mottale testified that it is his practice to disclose to his customers purchasing replacement parts what it is they are buying. In addition, one of Mottale's customers, a retail jeweler, testified that Mottale had never misrepresented the products that he sold, and further that the retail jeweler himself always disclosed to the ultimate customer the source of the replacement parts. In view of this evidence of Mottale's business practices, which the district court was in the best position to evaluate, the district court did not clearly err in finding that Rolex had failed to prove that Mottale either intentionally induced infringement, or had knowledge of others' infringing use. *See Inwood Labs.,* 456 U.S. at 857, 102 S.Ct. 2182 (holding that appellate court cannot substitute its interpretation of evidence for that of trial court simply because appellate court might give facts another construction, resolve ambiguities differently, and give more sinister construction to certain evidence).

The Fifth Circuit treated similar evidence in much the same fashion in *Meece.* There, Rolex also claimed that the jeweler's sale of generic replacement parts only fitting Rolex watches, which were marked only "Made in Italy," constituted contributory infringement. Rolex argued, as it does here, that because generic replacement parts are difficult to distinguish from genuine Rolex parts, and the parts only fit Rolex watches, the jeweler had reason to know that they would end up in infringing watches. *See* 158 F.3d at 829. The *Meece* court rejected Rolex's position:

> There was no evidence that Meece sold large quantities of parts to any single retailer. Instead, he sold only one or, at most, a few parts at a time to numerous jewelers. He testified that there was no group of jewelers or any particular jeweler who purchased a large number of replacement parts. Although Meece had no control over what the jewelers did with the parts he sold to them, there is no evidence that he continued to supply parts to jewelers he either knew, or had reason to know, were engaging in trademark infringement.

*Id.* Similarly, there is no evidence here that Mottale continued to sell replacement parts to jewelers he knew or had reason to know were engaging in trademark infringement or counterfeiting.[10] Accordingly, the district court's finding that Rolex failed to prove that Mottale's sale of replacement parts constituted contributory infringement was not clearly erroneous.

## III. CONCLUSION

Because the changes that Mottale makes to used Rolex watches are so basic that they result in a different product, we reverse the permanent injunction entered by the district court to the extent that it

---

**10.** Rolex argues that Mottale's sale of a generic diamond bezel and Rolex dial customized with non-Rolex diamonds to a Rolex investigator who sought to have them installed on his own Rolex watch is evidence of contributory infringement. We disagree. Under an unchallenged aspect of the district court's or-

der, Mottale's sale of the refurbished Rolex dial without disclosures violated the Lanham Act. But given that the Rolex investigator sought to install these parts on his own Rolex watch, Mottale's sale of these parts was not *in addition* evidence of contributory infringement.

permitted Mottale to retain Rolex's trademarks on the altered "Rolex" watches he sells, and remand with directions to enter a permanent injunction consistent with this opinion. We also reverse the district court's denial of Rolex's request for attorney's fees under its claim that Mottale's sale of altered "Rolex" watches violated its trademark rights, and remand this claim for consideration under 15 U.S.C. § 1117(b). We otherwise affirm the district court's judgment. Each party shall bear its or his own costs on appeal.

Accordingly, the judgment and permanent injunction entered by the district court are **AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.**