**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AU-TOMOTIVE GOLD INC,
    *Plaintiff-counter-defendant-*
                       *Appellant,*

             v.

VOLKSWAGEN OF AMERICA, INC.;
AUDI OF AMERICA, INC;
VOLKSWAGEN AKTIENGESELLSCHAFT;
AUDI AKTIENGESELLSCHAFT;
CONTINENTAL ENTERPRISES,
    *Defendants-counter-claimants-*
                       *Appellees.*

No. 08-16005

D.C. No.
4:01-cv-00162-FRZ

OPINION

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, District Judge, Presiding

Argued and Submitted
November 4, 2009—San Francisco, California

Filed May 6, 2010

Before: John T. Noonan and William A. Fletcher,
Circuit Judges, and Kevin Thomas Duffy,*
District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

---

**COUNSEL**

Henry Kenneth Kudon, Potomac, Maryland, Dennis A. Rosen, Tucson, Arizona, for the appellant.

Gregory Eugene Good, GOOD LAW, P.C. Tucson, Arizona, Thomas R. Lee, Gregory R. Phillips, Scott R. Ryther, HOWARD PHILLIPS & ANDERSEN, Salt Lake City, Utah, for the appellees.

---

**OPINION**

W. FLETCHER, Circuit Judge:

We are asked to decide whether the sale by Au-Tomotive Gold ("Auto Gold") of marquee license plates bearing Volkswagen badges purchased from Volkswagen constitutes trademark infringement, or whether the sale of the plates is protected by the "first sale" doctrine. In *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc. ("Auto Gold I")*, 457 F.3d 1062 (9th Cir. 2006), we concluded that Auto Gold's production and sale of automobile accessories bearing Volkswagen's trademarks created a sufficient likelihood of confusion to constitute trademark infringement. *Id.* at 1078. We remanded to the district court to address Auto Gold's "first sale" and other defenses. *Id.* On remand, the district court granted summary judgment and a permanent injunction to Volkswagen.

We affirm. We hold that the "first sale" doctrine does not provide a defense because Auto Gold's marquee license plates create a likelihood of confusion as to their origin.

## I.   Facts and Proceedings Below

Auto Gold produces and sells automobile accessories for specific makes of cars. Volkswagen and its subsidiary Audi are car manufacturers with well-known trademarks. The trademark at issue in this appeal is the familiar Volkswagen logo consisting of the letters "VW" inside a circle.

Beginning in the 1990s, Auto Gold produced and sold products bearing Volkswagen and Audi trademarks without permission from Volkswagen or Audi. It sold four products: license plates, license plate frames, key chains, and marquee license plates. The first three products used replicas of the companies' trademarks. However, the marquee license plates used actual VW badges purchased on the open market from a Volkswagen dealer. Auto Gold asserts its "first sale" defense only as to the marquee plates.

The marquee license plates are plain silver or black plates on which Auto Gold has mounted the VW badges. These badges are sold by Volkswagen and are ordinarily used as replacements for the badges found on the hoods or trunks of Volkswagen vehicles. Auto Gold purchased the badges, altered them by removing prongs and (in some cases) gold-plating them, and mounted them on the marquee plates. The plates were packaged with labels that explained that the plates were not produced or sponsored by Volkswagen.

Both parties accept for purposes of this appeal that Volkswagen had knowledge of Auto Gold's products as early as January 1999. In September 1999, a Volkswagen representative sent a letter to Auto Gold requesting that it cease using the trademarks. When Auto Gold refused to do so, a Volkswagen representative sent a second letter in October 1999. A

Volkswagen representative sent a third letter in February 2001.

On April 19, 2001, Auto Gold filed suit seeking a declaratory judgment that its activities did not constitute an infringement or dilution of Volkswagen or Audi trademarks. Volkswagen and Audi counterclaimed, alleging federal trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114, false designation under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and related state-law claims. Both parties moved for summary judgment.

The district court granted summary judgment to Auto Gold on all claims, holding that under the doctrine of "aesthetic functionality" the trademarks were "functional" and therefore not protected by trademark law. We reversed. *Auto Gold I*, 457 F.3d at 1064. We held that "the use of Volkswagen and Audi's marks is neither aesthetic nor independent of source identification." *Id.* at 1073. Rather, we held, consumers buy Auto Gold products because of the products' identification with the companies' brands. *Id.* at 1073-74. We further held that Volkswagen and Audi had established an affirmative case for an infringement claim under § 32 of the Lanham Act. *Id.* at 1074-78. We noted that "[t]his case presents an easy analysis in terms of likelihood of confusion." *Id.* at 1076. We then remanded to the district court for consideration of Auto Gold's "first sale" and other related defenses. *Id.* at 1078.

Auto Gold asserted two defenses on remand. It argued that the marquee license plates are protected under the "first sale" doctrine because the plates use lawfully acquired VW badges and because their packaging disclaims any association with Volkswagen. It also argued that Volkswagen's claims are barred by laches.

The district court rejected Auto Gold's "first sale" and laches defenses and granted Volkswagen summary judgment and a permanent injunction. Auto Gold timely appealed.

## II.   Standard of Review

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *See Universal Health Serv., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).

## III.   Discussion

### A.   "First Sale" Defense

Auto Gold argues that because it purchased actual VW badges from a Volkswagen dealer for use on the marquee license plates, the "first sale" doctrine protects the sale of the plates. We hold that the "first sale" doctrine does not provide a defense because the plates create a likelihood of confusion as to their origin. We do not base our holding on a likelihood of confusion among purchasers of the plates. Rather, we base it on the likelihood of post-purchase confusion among observers who see the plates on purchasers' cars.

#### 1.   Background

The "first sale" doctrine was first introduced in an opinion by Justice Holmes in *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924). Prestonettes purchased toilet powder and perfumes produced and trademarked by Coty. Prestonettes incorporated the Coty products into its own products by combining the powder with a binder to create a cream and by rebottling the perfumes into smaller bottles. *Id.* at 366-67. The Supreme Court held that Prestonettes did not violate trademark law. "The defendant of course by virtue of its ownership had a right to compound or change what it bought, to divide either

the original or the modified product, and to sell it so divided." *Id.* at 368.

The Court further held that Prestonettes could identify the components of its products as being Coty trademarked products so long as its labels were not misleading. *Id.* For example, Prestonettes could place a label on the perfume bottles stating, "Prestonettes, Inc., not connected with Coty, states that the contents are Coty's . . . independently rebottled in New York." *Id.* at 367. It rejected Coty's argument that Prestonettes should not be allowed to use the Coty trademark in its description of the product because Prestonettes's products might be inferior. It wrote, "If the compound was worse than the constituent, it might be a misfortune to [Coty], but [Coty] would have no cause of action, as [Prestonettes] was exercising the rights of ownership and only telling the truth. The existence of a trademark would have no bearing on the question." *Id.* at 368. The Court relied on the fact that consumers would not be confused about the manufacturer of the product. "A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his." *Id.*

**[1]** Application of the "first sale" doctrine has generally focused on the likelihood of confusion among consumers. In *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1077 (9th Cir. 1995), we held that the "first sale" doctrine protected Longs when it purchased Sebastian hair products from a distributor and sold them in its own store despite Sebastian's efforts to allow only "Sebastian Collective Members" to sell the products. We recognized the principle that "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Id.* at 1074. We emphasized that this rule "preserves an area of competition by limiting the producer's power to control the resale of its product," while ensuring that "the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer." *Id.* at 1075.

We also applied the "first sale" doctrine in *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1084-85 (9th Cir. 1998), in which Costco purchased porcelain figurines manufactured by Enesco, repackaged them in allegedly inferior packaging, and sold them in its own stores. We held that Costco could repackage and sell the Enesco figurines, but that it was required to place labels on the packages that disclosed to the public that Costco had repackaged Enesco's original product. *Id.* at 1086 (citing *Prestonettes*, 264 U.S. at 367-69). We rejected Enesco's argument that it would be harmed, even with this disclosure, because of the poor quality of the packaging. "The critical issue is whether the public is likely to be confused as a result of the lack of quality control." *Id.* at 1087.

A number of district courts have applied the "first sale" doctrine in cases where the defendants incorporated the trademarked product into a new product. *See, e.g.*, *Alexander Binzel Corp. v. Nu-Tecsys Corp.*, 785 F. Supp. 719 (N.D. Ill. 1992) (defendant manufactured welding gun using some parts bearing trademark of competitor); *Major League Baseball Players Ass'n v. Dad's Kid Corp.*, 806 F. Supp. 458 (S.D.N.Y. 1992) (defendant used three baseball trading cards bearing trademarks to create 3D playing card); *Scarves by Vera, Inc. v. Am. Handbags, Inc.* 188 F. Supp. 255 (S.D.N.Y. 1960) (defendant used towels bearing plaintiff's trademark to create handbags). In these cases, the courts focused on the possibility of confusion as the dispositive factor. *See Alexander Binzel Corp.*, 785 F. Supp. at 724 (finding that "defendants did all that was required of them to diminish customer confusion by packaging their product with the Nu-Tecsys name and logo"); *Dad's Kid Corp.*, 806 F. Supp. at 460 ( finding "no likelihood that anyone will be confused as to origin"); *Scarves by Vera, Inc.*, 188 F. Supp. at 258 (issuing injunction requiring further labeling because the court found "that the average purchaser would be misled" otherwise).

**[2]** A separate line of cases further illustrates the central role of the likelihood of confusion, including post-purchase

confusion, in trademark infringement claims. In this line of cases, we have held that producers committed trademark infringement by selling refurbished or altered goods under their original trademark. None of these cases directly addressed the "first sale" doctrine, but they establish that activities creating a likelihood of post-purchase confusion, even among non-purchasers, are not protected.

**[3]** In *Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc. ("Surgi-Tech")*, 285 F.3d 848, 852-53 (9th Cir. 2002), Surgi-Tech repaired Storz endoscopes at the request of hospitals that owned them. Surgi-Tech sometimes rebuilt the endoscopes, replacing every part and "retaining only the block element bearing Storz's trademarks." *Id.* at 852. At an earlier time, Surgi-Tech had etched its own mark into rebuilt endoscopes to make clear what it had done, but Surgi-Tech had stopped that practice. *Id.* Storz submitted evidence of confusion on the part of surgeons who were not the purchasers of the endoscopes but who used them and mistakenly blamed Storz when they malfunctioned. *Id.* at 855. We held that there was a triable issue of fact on Storz's trademark infringement claim, even though there was no claim of purchaser confusion. *Id.* at 853-55. We relied entirely on the possibility of confusion among non-purchasers, noting that such confusion "may be no less injurious to the trademark owner's reputation than confusion on the part of the purchaser at the time of sale." *Id.* at 854 (citation omitted).

We also relied on the likelihood of non-purchaser confusion in *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704 (9th Cir. 1999). The defendant sold used Rolex watches that had been "reconditioned" or "customized" with non-Rolex parts. *Id.* at 707. We agreed with the district court that "retention of the original Rolex marks on altered 'Rolex' watches . . . was deceptive and misleading as to the origin of the non-Rolex parts, and likely to cause confusion to subsequent or downstream purchasers, as well as to persons observing the product." *Id.* at 707.

In both *Surgi-Tech*, 285 F.3d at 852, and *Rolex*, 179 F.3d at 707, we made clear that the defendants did not deceive the direct purchasers of the products. Rather, in both cases, we found trademark infringement based on a likelihood of confusion on the part of non-purchasers.

### 2. Application to the Marquee Plates

**[4]** We held in *Auto Gold I* that the marquee license plates create a likelihood of post-purchase confusion on the part of observers of the plates. "Shorn of their disclaimer-covered packaging, Auto Gold's products display no indication visible to the general public that the items are not associated with Audi or Volkswagen. The disclaimers do nothing to dispel post-purchase confusion." *Auto Gold I*, 457 F.3d at 1077-78. It is likely that a person on the street who sees an Auto Gold marquee license plate with a VW badge will associate the plate with Volkswagen. Indeed, customers buy marquee license plates principally to demonstrate to the general public an association with Volkswagen. "The demand for Auto Gold's products is inextricably tied to the trademarks themselves." *Id.* at 1074.

**[5]** Auto Gold, however, maintains that the likelihood of post-purchase confusion does not matter. Auto Gold argues, first, that confusion among non-purchasers is irrelevant in "first sale" cases. However, Auto Gold cannot point to any case in which a court has held that the "first sale" doctrine applies when there is a likelihood of post-purchase confusion. In *Prestonettes*, there was no suggestion that a third-party could be confused about, or even be aware of, the origin of the facial cream or perfume used by a purchaser. Likewise, there was no possibility of post-purchase confusion as to the origin of the hair products in *Sebastian* or the porcelain figurines in *Enesco*.

In each case in which a court has applied the "first sale" doctrine, the court either had good reason not to be concerned

with post-purchase confusion or took steps to avoid addressing the issue. In *Alexander Binzel Corp.*, the court noted that Binzel sold its parts to be incorporated into welding guns produced by other manufacturers. The defendant's "use of Binzel nozzles is fully consistent with Binzel's profit motive as well as the manner Binzel has chosen 'to control its product's reputation.' " 785 F. Supp at 723. In *Dad's Kid Corp.*, the court noted that baseball trading cards are regularly repackaged, displayed, or mounted, and that there was therefore "no likelihood that anyone will be confused as to origin by reason of Dad's Kid's treatment of genuine cards." 806 F. Supp. at 460. In *Scarves by Vera, Inc.*, the court noted that the plaintiff's trademark could be seen on some of the defendant's bags. It therefore insisted that a disclaimer label be sewn into the bag "near the clasp, and plainly visible to anyone opening the handbag." 188 F. Supp. at 256-258.

**[6]** Post-purchase confusion creates a free-rider problem. Auto Gold contends that in "first sale" cases "the element of 'free-riding' present in other post-purchase confusion cases disappears because the producer has paid the price asked by the trademark owner for the 'ride.' " This contention misses the point. When a producer purchases a trademarked product, that producer is not purchasing the trademark. Rather, the producer is purchasing a product that has been trademarked. If a producer profits from a trademark because of post-purchase confusion about the product's origin, the producer is, to that degree, a free-rider.

For example, a producer may purchase non-functioning Rolex watches and refurbish them with non-Rolex parts, leaving only the original casing. Even if the producer adequately explains the nature of the refurbished watches to purchasers, the producer nonetheless infringes on Rolex's trademarks by profiting from the Rolex name. In such a case, the purchasers buy the watches in order to make others think that they have bought a true Rolex watch. *See Rolex Watch*, 179 F.3d at 707-10. The same holds true for new but relatively cheap

products that prominently display a well-known trademark. If the producer purchases such a trademarked product and uses that product to create post-purchase confusion as to the source of a new product, the producer is free-riding even though it has paid for the trademarked product.

**[7]** Next, Auto Gold argues that there is no trademark infringement because its marquee plates are of high quality. But likelihood of confusion, not quality control, is "the 'key-stone' of trademark law." *Westinghouse Elec. Corp. v. Gen. Circuit Breakers & Elec. Supply Inc.*, 106 F.3d 894, 900 (9th Cir. 1997). Courts have consistently held for plaintiffs where there is a possibility of confusion, even where defendants are not selling lower quality goods. *See, e.g.*, *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 821-22 (9th Cir. 1980) (pocket tabs on Wrangler jeans infringed upon Levi's trademark by creating a likelihood of post-purchase confusion despite no contention that Wrangler jeans were of lower quality); *Bulova Watch Co. v. Allerton Co.*, 328 F.2d 20, 22-25 (7th Cir. 1964) (producer must remove "BULOVA" trademark from Bulova watch movement incorporated into non-Bulova watch case due to possible confusion, even though the producers' actions did "not adversely affect the movement"). Similarly, courts have consistently held for defendants where there was no possibility of confusion, despite the fact that the defendants may have lowered the quality of goods. *See, e.g.*, *Prestonettes*, 264 U.S. at 367; *Enesco Corp.*, 146 F.3d at 1087.

**[8]** Finally, Auto Gold argues that the public interest is served by the competition that results from the availability of its products. It may be true that Auto Gold's activities serve to reduce the price paid by consumers for marquee plates. But trademark law protects trademark holders from the competition that results from trademark infringement, irrespective of its effect on prices. *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 n.14 (1982) ("By applying a trademark to goods produced by one other than the trademark's owner, the

infringer deprives the owner of the goodwill which he spent energy, time, and money to obtain."); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 915 (9th Cir. 1980) (recognizing trademark infringement as a type of unfair competition).

**[9]** We therefore conclude that the district court correctly granted summary judgment to Volkswagen on its trademark infringement claim.

## B.  Laches

Auto Gold argues that the district court erred in granting an injunction because, it contends, there is a material question of fact as to whether Volkswagen's claim is barred by laches. We disagree.

"[T]he party asserting laches . . . must show that (1) [plaintiff's] delay in filing suit was unreasonable, and (2) [defendant] would suffer prejudice caused by the delay if the suit were to continue." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002). A court must find both factors for a suit or remedy to be barred by laches. *Id.*

**[10]** If a Lanham Act claim "is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit." *Id.* at 837. Because the Lanham Act does not have its own statute of limitations, we borrow the most analogous statute of limitations from state law in order to determine whether the plaintiff's delay in filing suit was reasonable. *Id.* at 835-36.

**[11]** The parties disagree over which Arizona statute of limitations should be applied to a laches defense to a claim under Lanham Act § 32, 15 U.S.C. § 1114(1)(a) (trademark infringement). Volkswagen argues that the three-year fraud

statute of limitations under Ariz. Rev. Stat. § 12-543(3) applies to all Lanham Act claims. Auto Gold argues that the applicable limitations period is either one year, as liability created by statute under Ariz. Rev. Stat. § 12-541(5), or two years, as injury to property under Ariz. Rev. Stat. § 12-542(3). We have not previously decided which statute of limitations applies to Lanham Act claims in circumstances where an Arizona statute of limitations would be applicable.

In *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2nd Cir. 1996), the court applied New York's fraud statute of limitations to a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (false designation). The court held that the fraud statute was most analogous because "intent and fraud play an important role in all Lanham Act claims." *Id.* It noted that "Section 45 of the Lanham Act explicitly states that the federal policy underlying the Act is, *inter alia*, 'to protect persons engaged in . . . commerce against unfair competition' and 'to prevent *fraud* and deception in such commerce.' " *Id.* (emphasis in original). This circuit similarly has applied California's fraud statute of limitations to Lanham Act claims in California. *See Surgi-Tech*, 285 F.3d at 857 (applying fraud statute of limitations to § 32 and § 43(a) claims); *Jarrow Formulas, Inc.*, 304 F.3d at 838 (parties agreed that California's fraud period applied). At least one district court has applied Oregon's fraud statute of limitations to a § 43(a) claim in that state. *See Collagenet, Inc. v. XAP Corp.*, 483 F. Supp. 2d 1058, 1062 (D. Or. 2007).

A district court in Arizona recently applied the three-year limitation period for fraud of Ariz. Rev. Stat. § 12-543(3) to a Lanham Act claim. *Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 989 (D. Ariz. 2007). The court noted, "Arizona's directly analogous law is its state trademark law, which . . . does not contain a statute of limitations." *Id.* The court held that the one-year period for liability created by statute does not apply because that period applies only to liabilities that did not exist under common law. *Id.* "Even with-

out the Arizona state trademark law, liability would exist under a common law tort theory." *Id.* (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)). Relying on cases applying the fraud statute of limitations in California and New York, it held that "the weight of authority supports application of the three-year limitation for fraud." *Id.*

**[12]** We agree and hold that Arizona's three-year statute of limitations for fraud applies to Lanham Act claims. Volkswagen first discovered Auto Gold's activities in January 1999. It filed suit in April 2001. Because Volkswagen filed suit against Auto Gold less than three years after it first received notice of Auto Gold's activities, Volkswagen's suit for an injunction is not barred by laches.

## Conclusion

For the forgoing reasons, we affirm the district court's grant of summary judgment and a permanent injunction to Volkswagen.

**AFFIRMED.**