CARTIER, A DIVISION OF RICHE-MONT NORTH AMERICA, INC., and Cartier International, B.V., Plaintiffs,

v.

AARON FABER INC. d/b/a Aaron Faber Gallery, Edward Faber, J & P Timep-ieces, and John Does 1–10, Defendants.

No. 05 Civ. 6615(VM).

United States District Court, S.D. New York.

Sept. 30, 2005.

Opinion Denying Reconsideration Nov. 7, 2005.

Milton Springut, Tal S. Benschar, Cartier International B.V., Kalow & Springut LLP, New York City, for Plaintiffs.

William Irvan Dunnegan, Megan Leigh Martin, Perkins & Dunnegan, Gerard Francis Dunne, Law Office of Gerald F. Dunne, P.C., New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs Cartier, division of Richemont North America, Inc. and Cartier International B.V. (collectively, "Cartier") moved for a preliminary injunction by Order to Show Cause. Cartier sought to enjoin defendants Aaron Faber, Inc., d/b/a Aaron Faber Gallery ("Faber"), Edward Faber, J & P Timepieces ("J & P") and other unnamed defendants (collectively, "Defendants") from offering for sale, advertising or distributing altered or modified Cartier watches, and, in particular, stainless steel Cartier watches which have been altered through the addition of diamonds to the bezel or case. After a hearing on August 11, 2005, the Court granted Cartier's request for a preliminary injunction as to the Defendants and entered two separate orders memorializing the relief. *See Cartier v. Aaron Faber, Inc.*, No. 05 Civ. 6615, 2005 WL 1981468 (S.D.N.Y. Aug. 12, 2005) (*"Faber Order"*) *Cartier v. Aaron Faber, Inc.*, No. 05 Civ. 6615, 2005 WL 1981485 (S.D.N.Y. Aug. 12, 2005) (*"J & P Order"*). In those orders, the Court indicated that it would address the concerns raised by Faber in the wording of the injunction and elaborate on the basis for and scope of the injunction granted. *Faber Order*, 2005 WL 1981468, at *1; *J & P Order*, 2005 WL 1981485, at *1. This opinion shall serve as the further explication of the injunction granted at the August 11, 2005 hearing.

## I. BACKGROUND [1]

Cartier designs and creates fine jewelry and watches which are sold around the world and throughout the United States. Among other trademarks and trade dress used to identify its products, Cartier uses its name on the products and owns U.S.

---

1. The factual summary derives from the undisputed allegations contained in the pleadings and various submissions from the parties.

Trademark Registration No. 759,201 for the word mark CARTIER for watches and clocks. Cartier produces a variety of watches in both stainless steel and white and yellow gold; however, it places diamonds only on the gold versions of its watches, never on the stainless steel models.

Faber is a company engaged in the business of selling watches and jewelry, including new and used Cartier watches and jewelry. Edward Faber is the President of Faber. J & P is a company that sells, among other items, new and used Cartier watches.

Cartier alleges that in or about March of 2005, Faber had in its shop window on Fifth Avenue in New York City what appeared to be a stainless steel Cartier Santos 100 watch with diamonds on the bezel ("Watch 1"). Faber admits that such a watch was in its inventory from March 17, 2005 through April 13, 2005 and that during that time period the watch was shown in Faber's store's display case. Faber states that it received the watch on consignment from J & P, and that the watch was returned to J & P on April 13 unsold. J & P admits that it has acquired Cartier watches, has had diamonds added to such watches and has offered those watches for sale with the Cartier mark intact, although it does not specifically admit to creating the Cartier Santos displayed at Faber.

Cartier alleges that in addition to the Cartier Santos seen in Faber's shop window, Faber offered to sell and in fact sold to an investigator working for Cartier an altered man's Cartier Santos 100 stainless steel watch with diamonds on the bezel ("Watch 2"). Faber does not dispute that it caused Watch 2 to be customized as indicated at the investigator's request.

Cartier asserted that it did not authorize or perform the modifications on either of these two watches.

Faber alleges that, other than the two watches described above, it has not customized or caused to be customized any Cartier watch. On the other hand, Faber acknowledges that it has sold used Cartier watches which had been customized by a previous owner by the addition of diamonds to the bezel.

Cartier submitted affidavits of two Cartier employees, the President and Chief Executive Officer, and Director of Technical Services for Richemont North America, Inc., attesting to the inferior nature of Watch 2, including that Cartier does not set diamonds on its stainless steel model watches; that the diamond settings were sloppy, uneven and were generally not of the same quality as the comparable genuine Cartier models; and that core watch functions, including its water resistance, were compromised in the customization of the watch. These individuals also attested to the potential effect that this product might have in the marketplace, such as the creation of confusion for aftermarket purchasers of the watch as to the origin of the workmanship, and the tarnishing of Cartier's reputation for its craftsmanship.

## II. DISCUSSION

### A. STATEMENT OF LAW

■ "A party seeking a preliminary injunction must demonstrate '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir.2004) (quoting *Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir.2002)).

Cartier brings this action for a preliminary injunction to stop the infringement of its trademark by Defendants. "Under § 1114 of the Lanham Act, plaintiff in a trademark infringement action must show that defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion." *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993) (citing 15 U.S.C. § 1114(1)(a)). On a motion for a preliminary injunction, "where the plaintiff has a protected mark, 'a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.'" *New Kayak Pool Corp. v. R & P Pools, Inc.* 246 F.3d 183, 185 (2d Cir.2001) (quoting *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1988)).

In determining the likelihood of confusion, the Court locks to the factors established in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961), including:

> (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap" ...; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers.

*Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir.1995). Because the Court finds that Cartier has met this standard, Cartier's motion for a preliminary injunction against Defendants is granted.

## B. *LIKELIHOOD OF CONFUSION*

Cartier has a protected trademark in its name (*see* U.S. Trademark Registration 759,201, dated October 29, 1963, attached as Ex. A to Decl. of Kenneth Callum Barton), and that mark has become incontestable. *See Gruner + Jahr*, 991 F.2d at 1076 ("[A] mark registered by its owner shall be *prima facie* evidence of the registrant's exclusive right to use the mark in commerce on the product. ... A registered mark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use." (citing the Lanham Act, 15 U.S.C. §§ 1065 & 1115(a))). Thus, Cartier need only establish a likelihood of confusion to prevail on its motion for a preliminary injunction.

The Court need not consider in great depth the individual *Polaroid* factors, as the altered Cartier watches clearly create a likelihood of confusion. *See Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003) (finding that in cases regarding counterfeit merchandise, "the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion"). The allegedly infringing watches are actual stainless steel Cartier watches with the Cartier trademark in tact on them that have been altered to look like the more expensive white gold, diamond encrusted versions made by Cartier; they are counterfeit goods. *See Cartier v. Symbolix, Inc.*, No. 05 Civ. 2777, 2005 WL 1330786, at *6 (S.D.N.Y. June 2, 2005) (considering nearly identical facts and finding diamond encrusted, stainless steel Cartier watches to constitute trademark counterfeiting under Section 32 of the Larham Act); *see also Westinghouse Elec. Corp. v. General Circuit Breaker & Electric Supply, Inc.*, 106 F.3d 894, 900 (9th Cir.1997) ("When an original mark is attached to a product in such a way as to deceive the public, the

product itself becomes a 'counterfeit' just as it would if an imitation of the mark were attached."). The point of the alteration of the watches at issue here is to create a likelihood of confusion that the wearer is in fact sporting the more expensive, authentic Cartier-made version. As Faber's representative told Cartier's investigator, "The stainless steel and white gold are identical to the eye. You can only tell the difference by the weight. You wouldn't know the difference by looking at it." (Decl. of Carol Ball, dated July 20, 2005 ("Ball Decl."), ¶ 4.)

This case is wholly distinguishable from the cases cited by Faber, *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924), and *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947). In *Prestonettes*, the Supreme Court upheld the use of Coty's name by Prestonettes on its toilet powders and perfumes, as the products were made in part from Coty's genuine powders and perfumes. 264 U.S. at 368, 44 S.Ct. 350. The Court found that the inclusion of Coty's name was merely a truthful representation to the consumer that the Prestonettes item contained Coty's products, and was not a violation of Coty's trademark:

> When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth.... If the name Coty were allowed to be printed in different letters from the rest of the inscription dictated by the District Court a casual purchaser might look no further and might be deceived. But when it in no way stands out from the statements of facts that unquestionably the defendant has a right to communicate in some form, we see no reason why it should not be used collaterally, not to indicate the goods, but to say that the trade-marked product is a constituent in

the article now offered as new and changed.

*See id.*

In *Champion Spark Plug*, the Supreme Court held that defendants could sell used and refurbished Champion spark plugs with the trademarked name "Champion" on them as long as the plugs were also clearly marked as being repaired or used. 331 U.S. at 129–30, 67 S.Ct. 1136. The Court stated that such "[f]ull disclosure gives the manufacturer all the protection to which he is entitled." *Id.* at 130, 67 S.Ct. 1136. The Court cautioned, however, that "[c]ases may be imagined where the reconditioning or repair would be so extensive or so basic that it would be a misnomer to call the article by its original name, even though the words 'used' or 'repaired' were added." *Id.* at 129, 67 S.Ct. 1136.

This litigation presents just such a case. The alteration of the Cartier watches is so extensive as to have significantly changed the design of the original product and to have compromised the core functions of the watch. *See Symbolix*, 2005 WL 1330786, at *4–5. However, the counterfeit quality of the product is disclosed nowhere on the face of the watch—the altered watches clearly display the name "Cartier" without any additional notation or attribution to another source. Only when it is explained to the customer does the second-hand production of the jewel-encrustation at issue come to light. A customer viewing the watches on her own or secondary purchasers of the watches would directly attribute to Cartier the bejeweled bezels, cases and/or bracelets, and any flaws in the workmanship or quality of the watch resulting from that alteration. While the uses of the marks in *Prestonettes* and *Champion Spark Plug* were informative to the consumer of the altered quality of the product and thus legitimate,

when the mark is used, as here, precisely for the purpose of confusing and thus deceiving the public, the use cannot be upheld. *See, e.g., Rolex Watch, U.S.A., Inc. v. Michel Co.,* 179 F.3d 704, 710 (9th Cir. 1999) (enjoining seller from retaining the "Rolex" trademark on genuine Rolex watches altered aftermarket by, for example, the addition of diamonds to the watch dial because the retention of the mark on such products constituted trademark infringement); *Rolex Watch USA, Inc. v. Meece,* 158 F.3d 816, 825 (5th Cir.1998) (finding that an order enjoining the sale of altered Rolex watches, including watches with diamonds added to the bezel, encompassed both altered new and used watches because both types of altered watches posed "the same threat of harm to Rolex from the perspective of secondary purchasers"); *Bulova Watch Co., Inc. v. Allerton Co., Inc.,* 328 F.2d 20, 23–24 (7th Cir. 1964).

Defendants contend that there is no likelihood that purchasers would be confused by the customized articles because they were informed by Faber employees that the watches were not the genuine, Cartier-made white gold version, but were altered stainless models. (Mem. of Defs. in Opp'n to Pls.' Mot. for a Preliminary Injunction, dated August 1, 2005 ("Defs.' Mem."), at 4–6.) However, Watch 1, for example, remained in Faber's display case for approximately one month, during which time customers could have viewed it and confused it for a genuine Cartier piece. Although Faber claims that its staff explained to customers who viewed the watch outside of the case that it was not a genuine Cartier article, Faber does not and surely cannot claim that all passersby were so enlightened as to the product's origin.

Furthermore, the active secondary market in Cartier watches adds an additional layer of likely post-sale confusion from the counterfeit Cartier jeweled watches. *See Symbolix,* 2005 WL 1330786, at *6; *see also Hermes Int'l v. Lederer de Paris Fifth Avenue, Inc.,* 219 F.3d 104, 108 (2d Cir.2000) ("The creation of confusion in the post-sale context can be harmful...."); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872 (2d Cir. 1986) ("[P]ost-sale confusion as to source is actionable under the Lanham Act."). Individuals viewing the watches on a purchaser's wrist would be misled as to the true nature of the watch's craftsmanship, and any effect such identification might have on Cartier's goodwill with the public is actionable. *Lois Sportswear,* 799 F.2d at 872 ("[T]he Lanham Act was designed to prevent a competitor from such a bootstrapping of a trademark owner's goodwill....").

The Court thus finds that the offering for sale by Faber and J & P of altered new and used Cartier watches creates a likelihood of confusion such that a preliminary injunction is warranted. The scope of this injunction does not include the sale of used watches by Faber or J & P that were altered by their previous owners. Nor does it prevent them from providing customization services to owners of Cartier watches who on their own initiative seek to personalize their Cartier timepieces, which they have previously purchased, through either engraving, changing the bracelet or other methods.

What the injunction does proscribe is either Faber or J & P actively marketing new and used Cartier watches that either Faber or J & P caused to be altered in such a way as to deceive the general public as to the origins of the watch's craftsmanship. An example of such enjoined conduct would be the purchase by either J & P or Faber, for sale to other customers, of a new or used Cartier watch which either

then causes to be altered in such a way as to mimic a genuine Cartier product. This prohibition includes taking a stainless steel Cartier model and polishing it to look like it is made of white gold and then adding diamonds to the case and bezel, and also taking a genuine gold Cartier watch and bejeweling it to resemble Cartier's genuine diamond-encrusted gold models.

## III.  *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the defendants Aaron Faber, Inc., d/b/a Aaron Faber Gallery ("Faber"), Edward Faber, J & P Timepieces ("J & P") and other unnamed defendants (collectively, "Defendants") are enjoined from the infringement of the trademark "Cartier" owned by plaintiffs Cartier, division of Richemont North America, Inc. and Cartier International B.V. (collectively, "Cartier") as previously outlined in the Court's Order dated August 12, 2005; and it is further,

**ORDERED** that, pursuant to Fed. R.Civ.P. 65(c), Cartier shall post a bond in the amount of $25,000 by no later than Friday, October 14, 2005 at 5:00 p.m. for the payment of such costs and damages as may be incurred or suffered by any party in this litigation who is found to have been wrongfully enjoined or restrained.

The parties are directed to notify the Court by Friday, October 14, 2005 as to whether they have agreed on a case management plan and shall submit a completed plan to the Court, or whether they have been unable to reach an agreement on the schedule for discovery and remaining pretrial proceedings in this action. In the event the parties inform the Court that they have been unable to agree, the Court will schedule a conference with all parties.

**SO ORDERED.**

### *DECISION AND ORDER*

After a hearing on August 11, 2005 ("August 11 Hearing"), and by Decision and Order dated August 12, 2005 (the "Summary Order"),[1] the Court granted the motion for a preliminary injunction brought by plaintiffs Cartier, division of Richemont North America, Inc. and Cartier International B.V. (collectively, "Cartier"). Cartier sought to enjoin defendants Aaron Faber, Inc., d/b/a Aaron Faber Gallery, and Edward Faber (collectively, "Faber"), J & P Timepieces ("J & P") and other unnamed defendants (collectively, "Defendants") from offering for sale, advertising or distributing altered or modified Cartier watches, and, in particular, stainless steel Cartier watches which have been altered through the addition of diamonds to the bezel or case. The Court issued a subsequent Decision and Order, dated September 30, 2005 (the "Decision"),[2] to further explain the injunction issued in the Summary Order. *See Cartier II*, at 357, 2005 WL 2429649, at *1 ("This opinion shall serve as the further explication of the injunction granted at the August 11, 2005 hearing."); *Cartier I*, 382 F.Supp.2d at 624 ("The Court will address the concerns raised by the parties in a separate opinion that will more thoroughly explain the basis for and scope of the preliminary injunction ordered by the Court at the August 11 Hearing and as memorialized below.").

Cartier and Faber both now move for an Order pursuant to Federal Rule of Civil

---

1. The August 12 Summary Order is reported as *Cartier v. Aaron Faber Inc. ("Cartier I" )*, 382 F.Supp.2d 623 (S.D.N.Y.2005).

2. The Decision is reported as *Cartier v. Aaron Faber, Inc. ("Cartier II" )*, 396 F.Supp.2d 356, 2005 WL 2429649 (S.D.N.Y. Sept. 30, 2005).

Procedure 65 and Local Civil Rule 6.3 ("Local Rule 6.3") granting clarification, modification or reconsideration of the preliminary injunction entered by the Court. For the reasons set forth below, their motions are denied.

■■■ Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Sec. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000). Under Local Rule 6.3, which governs motions for reconsideration, the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision. *See Lichtenberg v. Besicorp Group Inc.,* 28 Fed.Appx. 73, 74, 2002 WL 109483, at *1 (2d Cir.2002); *SEC v. Ashbury Capital Partners, L.P.,* No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (citing *AT & T Corp. v. Comty. Network Servs., Inc.,* No. 00 Civ. 316, 2000 WL 1174992, at *1 (S.D.N.Y. Aug. 18, 2000) and Local Rule 6.3). Local Rule 6.3 is intended to "ensure the finality of decisions and to prevent the practice of a losing party [from] examining a decision and then plugging the gaps of a lost motion with additional matters." *See id.* (citing *Carolco Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988)). A Court must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for·appealing a final judgment. *See Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 150 (S.D.N.Y.1999); *In re Houbigant, Inc.,* 914 F.Supp. 997, 1001 (S.D.N.Y.1996) (noting that a motion for reconsideration is not an

opportunity for the moving party "to argue those issues already considered when a party does not like the way the original motion was resolved.").

Both parties identify what they regard as an inconsistency between the Court's Summary Order and the subsequent Decision. The inconsistency referred to concerns whether the Defendants are enjoined from the sale of used Cartier watches that have been altered by their previous owners. Although the precise issue is not explicitly addressed in the Summary Order, the terms of the injunction could plausibly be construed to bar such sales, while the Decision would allow for them. *See Cartier II,* at 361, 2005 WL 2429649, at *5 ("The scope of this injunction does not include the sale of used watches by Faber or J & P that were altered by their previous owners."). Thus, the Court is persuaded that, read together, there is some ambiguity between the two provisions.

To the extent that the Decision may be interpreted as conflicting in any way with the earlier Order granting the preliminary injunction, the Summary Order defines the scope of the injunction entered by the Court at the August 11 Hearing. By its own terms, the Decision was meant to further explicate the Court's basis for the injunction entered at the Hearing, as stated in the Summary Order, and was not intended to alter the substance of the injunction granted by the Summary Order. Any unresolved issues as to the scope of any permanent injunction, should such injunction be warranted after the adjudication of the merits of Cartier's case, will be determined by the Court after such adjudication has taken place. Until such time, the injunction as stated in the Summary Order remains in place.

## *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the defendants Aaron Faber, Inc., d/b/a Aaron Faber Gallery and Edward Faber (collectively, "Faber"), J & P Timepieces ("J & P") and other unnamed defendants (collectively, "Defendants") are enjoined from the infringement of the trademark "Cartier" owned by plaintiffs Cartier, division of Richemont North America, Inc. and Cartier International B.V. (collectively, "Cartier") as previously outlined in the Court's Order dated August 12, 2005 (the "Summary Order"); and it is further,

**ORDERED** that the motions under Local Rule 6.3 (Docket No. 35) submitted by Faber and Cartier for reconsideration of the Court's Summary Order and its Decision and Order dated September 30, 2005 are DENIED.

SO ORDERED.