CARTIER, a division of Richemont North America, Inc., Cartier International, N.V., Panerai, a division of Richemont N.A., Inc., Piaget, a division of Richemont N.A., Inc., Richemont International, S.A., Van Cleef & Arpels Logistisics, S.A., Van Cleef & Arpels, Inc., and Van Cleef & Arpels Distribution, Inc., Plaintiffs,

v.

AARON FABER INC. d/b/a Aaron Faber Gallery, Edward Faber, J & P Timepieces, Jeff Morris, Peter Fossner, Renaissance Watch Co., Michael Policino, and John Does 3–5, 8–10, Defendants.

No. 05 Civ. 6615(VM).

United States District Court, S.D. New York.

Sept. 27, 2007.

Milton Springut, Tal S. Benschar, Kalow & Springut LLP, New York, NY, for Plaintiffs.

William Irvin Dunnegan, Megan Leigh Martin, Perkins & Dunnegan, Gerard Francis Dunne, Law Office of Gerard F. Dunne, P.C., New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Cartier, a division of Richemont North America, Inc.; Cartier International, N.V. (collectively, "Cartier"); Panerai, a division of Richemont N.A., Inc.; ("Panerai"); Piaget, a division of Richemont N.A., Inc. ("Piaget"); Richemont International, S.A. ("Richemont"); Van Cleef & Arpels Logistics, S.A.; Van Cleef & Arpels, Inc.; and Van Cleef & Arpels Distribution (collectively, "Van Cleef & Arpels") (collectively, "Plaintiffs") brought this action alleging, among other things, trademark infringement under the Lanham Act (the "Act"), 15 U.S.C. §§ 1114(1) and 1125(a) (" §§ 1114(1) and 1125(a)"), against multiple defendants including those remaining, namely, J & P Timepieces ("J & P"), Jeff Morris ("Morris"), and Peter Fossner ("Fossner") (collectively, "Defendants"). By Orders dated August 12, 2005 and September 30, 2005, the Court granted Cartier's request for a preliminary injunction against Defendants.

*See Cartier v. Aaron Faber, Inc.*, 382 F.Supp.2d 623 (S.D.N.Y.2005); *Cartier v. Aaron Faber, Inc.*, 396 F.Supp.2d 356 (S.D.N.Y.2005). Plaintiffs now move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") on liability under the Act, and for entry of a permanent injunction against Defendants. Plaintiffs also move to add Officine Panerai, N.V. as a plaintiff. Defendants cross-move for partial summary judgment denying Plaintiffs' claims for damages under §§ 1114(1) and 1125(a). For the reasons discussed below, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART, and Defendants' cross-motion is DENIED.

## I. *BACKGROUND*

Plaintiffs are a related group of companies that manufacture and sell luxury goods. Cartier designs and creates jewelry and watches, including certain models containing diamonds, on which it uses its name for the purpose of identification. It owns U.S. Trademark Registration No. 759,201 for the word mark CARTIER for watches and clocks. On July 22, 2005, Cartier commenced an action against Aaron Faber, Inc. and Edward Faber alleging, among other things, infringement of this trademark. Through subsequent amendments to its complaint, Cartier added multiple defendants, including J & P and its principals, Morris and Fossner. Cartier also added Panerai, Piaget, and Van Cleef & Arpels as plaintiffs, each of whom claims infringement of its respective trademarks. Plaintiffs have since settled their claims against all defendants other than J & P, Morris, and Fossner.

J & P is in the business of buying and selling premium watches, and it admits that it acquired and modified watches produced by Plaintiffs. Specifically, it acknowledges that it caused third-party jewelers to mount diamonds on watches bearing the marks CARTIER, PANERAI, PIAGET, and VAN CLEEF & ARPELS, which it then sold or offered for sale on consignment to auction houses.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the burden of proving that no genuine issue of material fact exists or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994).

### B. *LIABILITY OF J & P UNDER THE LANHAM ACT*

"Under § 1114 of the Lanham Act, plaintiff in a trademark infringement action must show that defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion." *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993); *see* 15 U.S.C. § 1114(1)(a). Section 1125(a) extends similar protections to unregistered trademarks. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir.2002) (Section 1114(1)(a) "is a broad federal unfair competition provision which protects unregistered trademarks

similar to the way that [§ 1114(1)] protects registered marks.").

■ To prevail under § 1125(a) or § 1114(1), a plaintiff must therefore establish "(1) that it has a valid mark that is entitled to protection under the Act and (2) that [the defendant's] actions are likely to cause confusion as to the origin of the mark." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d 284, 287 (S.D.N.Y.2003); *see also Gruner + Jahr,* 991 F.2d at 1075. Because J & P admits to having offered for sale, without permission, altered versions of Plaintiffs' products and does not dispute the validity of Plaintiffs' marks, the Court's determination as to J & P's liability hinges on the likelihood of confusion.

■ Likelihood of confusion is determined in the Second Circuit by the multi-factor test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.,* which includes examination of:

> the strength of [the prior owner's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

287 F.2d 492, 495 (2d Cir.1961). *See Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 391 (2d Cir.1995). However, a detailed analysis of the *Polaroid* factors is not necessary in cases regarding counterfeit merchandise, which by its nature causes confusion. *See Philip Morris USA Inc. v. Felizardo,* No. 03 Civ. 5891, 2004 WL 1375277, *5 (S.D.N.Y. June 18, 2004); *Gucci,* 286 F.Supp.2d at 287.

■ A product is deemed counterfeit if it contains an original mark that is likely to deceive the public as to its origin. *See*

*Cartier v. Symbolix, Inc.,* 386 F.Supp.2d 354, 361 (S.D.N.Y.2005). In the present case, J & P purchased genuine watches manufactured by Plaintiffs, added diamonds to them, and sold them or offered them for sale on consignment to auction houses, such as Christie's and Sotheby's. The watches retained Plaintiffs' original marks, and they displayed no additional mark indicating that the diamonds had been added by J & P, not the original manufacturer. The retention of the Plaintiffs' marks with no indication that the watches had been significantly altered by J & P creates a likelihood that customers would be deceived into believing that the alterations were performed by the original manufacturers. As the Court stated in granting the preliminary injunction: "A customer viewing the watches on her own or secondary purchasers of the watches would directly attribute to Cartier the be-jeweled bezels, cases and/or bracelets, and any flaws in the workmanship or quality of the watch resulting from that alteration." *Cartier v. Aaron Faber, Inc.,* 396 F.Supp.2d at 360. Indeed, at least some of the watches were modified in such a way as to appear identical to more expensive models produced by Plaintiffs. The watches modified and sold by J & P therefore constitute "counterfeit" merchandise for purposes of the Lanham Act. *See Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.,* 106 F.3d 894, 900 (9th Cir.1997) ("When an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit' just as it would if an imitation of the mark were attached.").

Defendants cite a number of cases, including *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924) and *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386

(1947), for the proposition that trademark law does not preclude the unauthorized sale of genuine goods bearing an original mark. However, both of those cases explicitly require that the original mark not be used in such a way as to deceive the public. In *Prestonettes*, the Court stated, "When [a] mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth." 264 U.S. at 368, 44 S.Ct. 350; *see also Champion*, 331 U.S. at 129, 67 S.Ct. 1136. In *Champion*, which involved the sale of reconditioned spark plugs manufactured by Champion and bearing the Champion trademark, the Supreme Court upheld the lower court's decree requiring that the defendants clearly mark the word "Used" or "Repaired" on the spark plug itself. *See id.* at 130, 67 S.Ct. 1136. Here, J & P significantly modified watches manufactured by Plaintiffs, but did not mark the watches to disclose this fact to the public.

Because the Court finds that no genuine issue of material fact remains with respect to J & P's liability under the Act, Plaintiffs are entitled to summary judgment on this issue.

## C. *LIABILITY OF INDIVIDUAL DEFENDANTS*

■■ Under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition "if the officer is a 'moving, active conscious force behind [the defendant corporation's] infringement.'" *Martal Cosmetics, Ltd. v. Int'l Beauty Exchange Inc.*, 2007 WL 895697, *23 (E.D.N.Y. March 22, 2007) (*quoting Bambu Sales, Inc. v. Sultana Crackers*, 683 F.Supp. 899, 913 (E.D.N.Y.1988)); *see also Gucci*, 315 F.Supp.2d at 520 n. 7; *West Indian Sea Island Cotton Ass'n Inc. v. Threadtex, Inc.*, 761 F.Supp. 1041, 1054

(S.D.N.Y.1991). A showing that the officer "'authorized and approved the acts of unfair competition which are the basis of the corporation's liability is sufficient to subject the officer to personal liability.'" *Martal Cosmetics*, 2007 WL 895697, at *23 (*quoting Bambu Sales*, 683 F.Supp. at 913).

■ Plaintiffs argue that J & P's principals, Morris and Fossner, should each be held personally liable for the infringing acts of J & P. The excerpts of deposition transcripts, submitted by Plaintiffs in support of this argument, indicate that Morris personally arranged for the watches to be purchased, modified, and offered for sale. It is clear that Morris was the "moving, active conscious force" behind J & P's infringement of Plaintiffs' trademarks. The Court grants Plaintiffs' summary judgment motion for individual liability under the Act as to Morris.

■ As for Fossner, however, Plaintiffs have failed to adequate demonstrate that he should be held individually liable. Although Fossner was a 50 percent owner, with Morris, of J & P, his deposition does not indicate that he had an active role in the infringing activities of J & P. For example, when questioned about the sale of diamond-enhanced watches to Sotheby's, Fossner stated that he had nothing to do with it, and that Morris acted without his approval. (*See* Deposition of Peter Fossner, dated June 6, 2006, attached as Ex. B to Declaration of Tal S. Benschar, dated November 30, 2006, at 51:11–52:3.) Accordingly, Plaintiffs have not met their burden of showing that Fossner was an active force behind J & P's infringing acts, or even that he authorized and approved those acts, and the Court must deny Plaintiffs' motion for summary judgment on individual liability as to Fossner.

## D. *PERMANENT INJUNCTION*

 To obtain a permanent injunction, a plaintiff must demonstrate (1) actual success on the merits and (2) irreparable harm. *See Gucci*, 286 F.Supp.2d at 290. In cases of trademark infringement, a showing of likelihood of confusion establishes the element of irreparable harm. *See Genesee Brewing Co., v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir.1997). Plaintiffs have met the requirements for entry of a permanent injunction because they have demonstrated both actual success on the merits and irreparable harm.

The parties disagree, however, as to the proper scope of the injunction. Plaintiffs propose that the language of the permanent injunction conform to that used in the preliminary injunction issued by the Court, enjoining Defendants "from selling, offering for sale, advertising or distributing any 'Cartier' watches which have in any way been altered or modified by any person or entity not authorized to do so by Plaintiffs. . . ." *Cartier v. Aaron Faber, Inc.*, 382 F.Supp.2d 623, 624 (S.D.N.Y.2005). Plaintiffs also request that the permanent injunction be made applicable to the PANERAI, PIAGET, and VAN CLEEF & ARPELS trademarks. Plaintiffs do not object to retaining the provision in the preliminary injunction that allows Defendants to provide after-market services to any customer who already owns a watch manufactured by Plaintiffs and requests that it be modified. *See id.*

Defendants contend that, if the Court finds them liable under the Act, the scope of the injunction should be more limited. Specifically, Defendants assert that the injunction should restrain them from using any watches bearing Plaintiffs' marks that have been modified to include diamonds, unless a permanent label is affixed to them indicating that diamonds have been subsequently added by a third party.

A similar issue was addressed by the Ninth Circuit in *Rolex Watch U.S.A., Inc. v. Michel Co.*, 179 F.3d 704(9th Cir.1999). In that case, the defendant had reconditioned used Rolex watches with parts that were not made by Rolex (sometimes also adding diamonds) and had offered them for sale with the Rolex trademark intact. The district court found that the defendant's actions constituted trademark counterfeiting under § 1114(1), and it permanently enjoined the defendant from selling the altered watches without "(1) adding permanent independent marks on the non-Rolex parts, and (2) including a written disclosure concerning the generic replacement parts on tags, invoices, promotions, and advertising." *Rolex*, 179 F.3d at 706. Rolex appealed, and the Circuit Court held that the addition of an independent mark on the non-Rolex parts was inadequate to prevent consumer confusion. *See id.* at 710. Distinguishing *Champion*, it stated that the additional mark did not convey the "basic changes" that had been made to the watch, and concluded that "the face of the watch" would not "support a more adequate legend." *Id.*

Plaintiffs urge the Court to follow the reasoning of *Rolex*, arguing that the addition of an independent mark would not adequately convey the alterations performed by Defendants. However, the Court declines to go so far as to declare, in the context of a motion for summary judgment, that it would be impossible for Defendants to mark the watches they modify and offer for sale in such a way as to make clear to consumers that they have performed after-market alterations.

 Whether the addition of an independent mark would sufficiently mitigate the likelihood of confusion by consumers is a disputed issue of material fact, not properly resolved by summary judgment. *See*

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (The role of a court in ruling on a motion for summary judgment "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."). Accordingly, the preliminary injunction entered by the Court on August 12, 2005 will remain in effect pending a final disposition in this matter.

### D. *CROSS–MOTION TO DISMISS DAMAGES CLAIMS*

Defendants, citing 15 U.S.C. § 1117 ("§ 1117"), cross-move for partial summary judgment denying Plaintiffs' claims for damages. Section 1117(a) allows for recovery of a defendant's profits, actual damages, and the costs of bringing the action. Plaintiffs seek an award for profits and costs, but not actual damages.

Section 1117(a) states that any recovery is subject to 15 U.S.C. § 1111, which provides that "no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration." 15 U.S.C. § 1111. Defendants assert that, if the Court finds them liable for trademark infringement, Plaintiffs' claims for damages should be dismissed because Defendants had no notice that Plaintiffs' trademarks were registered.

■ However, § 1117 provides additional remedies in cases of trademark counterfeiting. Section 1117(b) allows for treble damages or profits upon a showing that a defendant intentionally used a counterfeit mark in commerce, and § 1117(c) sets forth statutory damages that a plaintiff may elect, in lieu of actual damages and profits, in cases involving the use of a counterfeit mark. A "counterfeit mark" is defined by the Act as a counterfeit of one that is registered for goods or services and in use, "whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116. As described above, the Court finds that the watches altered and offered for sale by Defendants constitute counterfeit merchandise. Accordingly, Defendants' argument fails because notice of registration is not required in cases of trademark counterfeiting.

■ Defendants also contend that Plaintiffs' claim for damages should be denied on the ground that the Act requires a showing of willful deception or actual confusion for an award of monetary relief. Defendants rely on *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992), as well as a number of earlier cases in support of this proposition. All of the cases cited by Defendants, however, were decided prior to the 1999 amendment to § 1117(a) which now provides in pertinent part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a *violation* under section 1125(a) or (d) of this title, or a *willful violation* under section 1125(c) of this title, shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a) (emphasis added). The plain language of the statute, therefore, indicates that wilfulness is not a prerequisite for an award of damages under § 1125(a). *See Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179, 2005 WL 1654859, at *9–*10 (S.D.N.Y., July 13, 2005); *see also Banjo Buddies, Inc. v. Renosky*, 399 F.3d

168, 174 (3d Cir.2005) (holding its pre-amendment bright-line willfulness requirement superseded by statute). As the *Nike* Court reasoned: "Without reason to believe that Congress intended to preserve the Second Circuit rule that preceded the 1999 amendment, the plain language of the statute should govern." *Id.*

 Furthermore, § 1114(1)(a) does not require a showing of either actual confusion or willful deceit. Rather, it imposes liability on a defendant who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" if such use "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Thus, a showing of likelihood of confusion, rather than actual confusion, is sufficient under that section.

Accordingly, Defendants' cross-motion for summary judgment denying Plaintiffs' claims for monetary relief under the Act must be denied.

### E. *MOTION TO AMEND COMPLAINT*

Plaintiffs also move for leave to amend their complaint to add Officine Panerai, N.V. as a plaintiff, and Defendants do not oppose this motion. Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Court therefore grants Plaintiffs leave to amend their complaint to add Officine Panerai, N.V. as a plaintiff in this matter.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 97) of plaintiffs Cartier, a division of Richemont North America, Inc.; Cartier International, N.V.; Panerai, a division of Richemont N.A., Inc.; Piaget, a division of Richemont N.A., Inc.; Richemont International, S.A.; Van Cleef & Arpels Logistics,

S.A.; Van Cleef & Arpels, Inc.; and Van Cleef & Arpels Distribution (collectively "Plaintiffs") for partial summary judgment with respect to liability under the Lanham Act is GRANTED as to defendants J & P Timepieces and Jeff Morris, and is DENIED as to defendant Peter Fossner; and it is further

**ORDERED** that Plaintiffs' motion to amend their complaint to add Officine Panerai, N.V. as a plaintiff is GRANTED; and it is further

**ORDERED** that the cross-motion (Docket No. 104) of defendants J & P Timepieces, Jeff Morris, and Peter Fossner (collectively "Defendants") for partial summary judgment denying Plaintiffs' claims for damages is DENIED; and it is further

**ORDERED** that the preliminary injunction entered by the Court in its Order dated August 12, 2005 is modified to the form contained herein:

1. Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, pending the final hearing and determination of this action, are enjoined from selling, offering for sale, advertising or distributing any "Cartier," "Panerai," "Piaget," or "Van Cleef & Arpels" watches which have in any way been altered or modified by any person or entity not authorized to do so by Plaintiffs, including any such watches which have been modified by the setting of diamonds thereon by any person or entity not authorized by Plaintiffs.

2. To the extent a used watch has been scratched in the normal course of use and wear, that shall not constitute "altered or modified" for the purpose of this preliminary injunction.

3. Nothing in the foregoing injunction shall prevent Defendants from providing after-market services to any customer who already owns a "Cartier," "Panerai," "Piaget," or "Van Cleef & Arpels" watch and requests service thereof where such service terminates in return of the watch to the same customer upon completion of such service.

And it is further

**ORDERED** that a final pretrial conference is scheduled for November 2, 2007 at 10:00 a.m.

**SO ORDERED.**